2009 Ark. App. 815

Vertis DAVIS, Appellant,

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.**

No. CA 09–734.

Court of Appeals of Arkansas.

Dec. 2, 2009.

Suzanne Ritter Lumpkin, Little Rock, for appellant.

Tabitha Baertels McNulty, Office of Chief Counsel, for appellee.

WAYMOND M. BROWN, Judge.

This is a termination-of-parental rights appeal brought by Vertis Davis. On April 17, 2009, the Pulaski County Circuit Court terminated her parental rights to D.W., born March 13, 2000, and M.L., born October 28, 2004. Appellant's attorney has filed a motion to withdraw pursuant to *Linker–Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), asserting that there are no issues of arguable merit to support the appeal. Under Rule 6–9(i)(1) of the Arkansas Rules of the Supreme Court and Court of Appeals, counsel's motion is accompanied by an abstract, addendum, and brief listing all adverse rulings made at the termination hearing and explaining why there is no meritorious ground for reversal, including a discussion of the sufficiency of the evidence to support the termination order. The clerk of this court sent a copy of counsel's motion and brief to appellant, informing her that she had the right to file pro se points for reversal. *See* Ark. Sup. Ct. R. 6–9(i)(3). Appellant filed pro se points for reversal on August 26, 2009.

DHS filed a dependency-neglect petition on March 5, 2007. The supporting affidavit stated that D.W., who is autistic and has ADHD, came to school in what appeared to be the same diaper in which he had left school the day before. There was a bowel movement in the diaper; the child smelled as if he had been soaked in urine all night; and there were sores and a rash on his diaper area. When a DHS worker interviewed appellant on February 14, 2007, appellant's home smelled strongly of urine and had no gas or running water. DHS implemented a safety plan for appellant and the children to stay with appellant's mother, Vertis Brown, when it was cold. Although the gas was turned on by February 16, 2007, the water was still off on March 1, 2007. On May 22, 2007, DHS implemented another safety plan for the children to live with their grandmother until appellant could find adequate housing (with DHS's help). On June 1, 2007, the circuit court accepted the parties' stipulation that the children were dependent-neglected because of environmental neglect. The court directed that the children would remain in appellant's legal custody but that, until she obtained appropriate housing, they would live with Mrs. Brown, pursuant to the safety plan.

DHS moved for an emergency change of custody on September 4, 2007. In the attached affidavit, the DHS worker stated that appellant's housing referral was approved on June 18, 2007; on June 21, 2007, however, appellant went to jail for third-degree domestic battery after an altercation with Nathan Love, M.L.'s putative father. Appellant was released from jail with a no-contact order. When the DHS worker saw appellant walking home from jail and gave her a ride home, appellant told the worker that the children were staying with their grandmother only "off and on" because she had breast cancer. On August 27, 2007, DHS held a second staffing with appellant, who admitted that the children and Mr. Love were living with her. The water at appellant's home was not yet turned on. On August 31, 2007,

DHS placed a seventy-two-hour hold on the children because appellant had violated the safety plan. The circuit court ordered an emergency change of custody on September 5, 2007.

On September 24, 2007, the circuit court entered a probable-cause order and gave appellant weekly supervised visitation. The court held a review hearing on October 3, 2007. The goal was reunification. The court stated that appellant had minimally complied with the case plan and court orders; she had missed her appointment for the psychological evaluation; had not yet attended parenting classes; and was still attempting to obtain housing. The court directed appellant to submit to a psychological evaluation; to complete parenting classes; to obtain and maintain appropriate and stable housing and income; and to comply with the district court's orders in the domestic-violence case. The court said that, if all parties agreed at the scheduled November 2007 staffing, appellant's visitation could be increased. On February 7, 2008, the court stated that the "most recent order" had placed the children in appellant's custody but that it was contrary to the children's welfare to remain with appellant.

A review hearing was held on March 20, 2008. The court stated that the case plan would remain reunification, with a concurrent plan of guardianship and permanent custody, and noted that appellant had partially complied with the case plan and court orders, although she had not obtained stable housing.

The court held a permanency-planning hearing on August 20, 2008. It continued the goal of reunification, finding that appellant was complying with the case plan and court orders. The court noted that appellant had completed parenting classes; had completed her psychological evaluation; and had appropriate housing; the

only negative factor, however, was her positive drug screen for marijuana that week. The court stated that she could have weekly visitation after testing negative on three consecutive drug screens.

On December 12, 2008, DHS filed a motion to clarify the court's oral order at the fifteen-month permanency-planning hearing held on November 6, 2008, where the court ordered appellant not to use marijuana when the children were in the home. DHS stated that, on November 17, 2008, appellant tested positive for marijuana, and admitted that she had used it on November 11, 2008. DHS asked the court to clarify what effect appellant's positive drug test and admission would have on her visitation.

DHS filed a petition to terminate appellant's parental rights on February 19, 2009. It alleged that other factors or issues had arisen subsequent to the filing of the original petition for dependency-neglect that demonstrated that the return of the juveniles to the custody of appellant was contrary to their health, safety, or welfare, and that, despite the offer of appropriate family services, appellant had manifested the incapacity or indifference to remedy the subsequent issues or factors. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(*a*) (Supp.2009). DHS stated that appellant's drug use came to light after the filing of the original petition and, although she had complied with the case plan and court orders regarding stable and appropriate housing, she had continued to use marijuana, which affected her ability to be a parent, and she had allowed her sister and her sister's children to live with her, in violation of the court's order. DHS also listed another ground, that the children had been adjudicated dependent-neglected and had continued out of appellant's custody for twelve months and, despite a meaningful effort by the

department to rehabilitate appellant and correct the conditions that had caused removal, those conditions had not been remedied. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(*a*).

On February 6, 2009, appellant tested positive for cocaine and THC. She tested positive for THC on February 13, 2009, and on February 18, 2009. Appellant tested negative for all drugs on March 6, 2009. Even though appellant said that she was clean, she tested positive for THC on March 13, 2009. Appellant tested positive for cannabinoids on March 19, 2009. On April 17, 2009 (the date of the termination hearing), appellant tested positive for THC, even though she denied using marijuana.

The court held the termination hearing on April 17, 2009. Tracie Brown, an investigator with the Crimes Against Children Division of the Arkansas State Police, testified (over appellant's objection) that appellant's seven-month-old nephew was admitted to Arkansas Children's Hospital for a spiral fracture of his left tibia that occurred while he was in appellant's care. Ms. Brown said that appellant told her that she had placed the infant on a top-bunk-bed mattress, which had rails on three sides, on the floor. Brown said that, although she could not prove that appellant personally inflicted the injury, by putting him in an inappropriate bed, appellant had placed him in a position that caused the injury. She believed that appellant had inadequately supervised and endangered him.

Tiffany Harper, the caseworker, testified about the history of this case, beginning with D.W.'s dirty diaper. She said that, although this case began because of environmental neglect, on which appellant made significant progress, appellant's drug use later emerged as a problem and was never remedied. She said that appellant had denied using drugs on February 6, 2009, and produced her prescribed medication bottles, one of which was hydrocodone. She stated that appellant had, on recent drug screens, also claimed that her use of aspirin or Aleve had led to false-positive results. Ms. Harper testified that appellant first tested positive for THC in August 2008; at that hearing, appellant testified that she did not have a problem with marijuana and could stop anytime. Ms. Harper said that the court instructed appellant not to use marijuana; appellant, however, later admitted that she had used marijuana on November 11, 2008. At the subsequent hearings, she said, appellant denied smoking marijuana at all; nevertheless, the lab confirmed one of the positive results [on March 19, 2009]. Additionally, she said, Mr. Love had testified that he and appellant smoked marijuana together when the children were in the home. Ms. Harper acknowledged that appellant had obtained housing; had completed her psychological evaluation; had sought counseling with Fritzie Hemphill, a social worker; had SSI income; and worked at Taco Bell. Ms. Harper said that the two foster families wanted to adopt the children. She did not believe that appellant had the patience to take care of a special-needs child like D.W. and a very active child like M.L., because she had seen her become very frustrated with the children's behavior during visitation. Because of appellant's continued drug use and denial of having a drug problem, along with the injury suffered by appellant's nephew, Ms. Harper recommended that appellant's parental rights be terminated.

Kasheena Walls, an adoption specialist, testified that the foster parents wanted to adopt the children, and that she had matched twelve families to children with these characteristics, including age, race, autism, and hyperactivity. She recom-

mended that the case's goal be changed to adoption.

Jan Davis, M.L.'s foster mother, testified that she wanted to adopt her. She said that, although M.L. had a bad problem with bed-wetting at first, especially after visits with appellant, they had overcome that problem. She also stated that M.L. had caught up in the developmental skills on which she was originally behind. She described M.L. as "smart as a button," "an angel," and "my baby." D.W.'s foster mother, Bertha Brown, also testified that she was willing to adopt him.

Fritzie Hemphill testified that appellant had been in counseling with her since March 2008, with some gaps in treatment between June to September 2008 and November 2008 to April 2009. She said that they worked on appellant's anger and depression, which can go along with mild mental retardation like appellant's. She said that, at first, appellant made some progress with anger management and coping skills, but her attendance became sporadic, and there were times when she did not show up for appointments. Ms. Hemphill said that she was unaware of any drug use by appellant until September 2008; because appellant had led her to believe that it was simply recreational, she had not recommended treatment. She said that she currently believed that appellant was in denial and that she needed drug treatment. She added that appellant's drug problem would have to be treated before she could even address her ability to parent a special-needs child.

Appellant testified that she did not have a drug problem and did not need drug treatment, regardless of the test results. The last time she used marijuana, she said, was November 2008; the other test results were caused by her prescribed medications, including Adderall, as well as aspirin and Aleve. She brought copies of some medicine bottles (erythromycin and hydrocodone, dated January 19, 2009, and metoprolol tartrate, dated November 18, 2008). Appellant admitted using marijuana on November 11, 2008, which was her birthday.

In the order terminating appellant's parental rights, the court found that appellant had partially complied with the court orders and case plan, but had not stopped using marijuana. In addition to the drug screens mentioned above, the court stated that appellant had tested positive for drugs on August 29, 2008; September 19, 2008; October 3, 2008; October 17, 2008; and November 6, 2008. The court acknowledged that appellant had housing; had attended counseling; had SSI income; and was working; however, she had violated the housing-authority rules by allowing her sister and her sister's children to live with her. The court found that "other factors" had arisen after the filing of the original petition for dependency-neglect, which appellant had shown the incapacity or indifference to remedy.

The court was also troubled about the injury that appellant's infant nephew suffered while in her care:

> Returning the juveniles to the custody of the mother could harm the juveniles' health and safety because she has not ceased her use of marijuana; she violated the no-contact order issued by District Court regarding Nathan Love with whom she had battery charge; a true finding was made against her for neglect/inadequate supervision for incident 2/21/09 with nephew N.P., who suffered a spiral fracture.

The court stated that it would not assume that N.P.'s injury was intentional, but considered it in finding neglect and inadequate supervision by appellant, which demonstrated that she was not a fit and proper parent for her children. The court found

that there were two foster families willing to adopt the children and that there were twelve families willing to consider children with these characteristics, including autism. The court found that appellant had not demonstrated an ability to make good decisions that were in the children's best interest, noting that she had continued to use marijuana, and that she was indifferent to the potential harm her drug use posed to her children. The court noted that appellant had allowed Mr. Love back into her home in violation of the no-contact order. The court stated that, although appellant had remedied the environmental-neglect issues that caused the case to be opened, she could not properly parent the children. Appellant filed a timely notice of appeal.

Pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(A) (Supp. 2009), an order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parent. The harm referred to in the termination statute is "potential" harm; the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). In addition, the proof must establish at least one of several statutory grounds. Ark.Code Ann. § 9–27–341(b)(3)(B).

The adoptability requirement was satisfied by the testimony of the adoption specialist and the caseworker, who said that the children were in pre-adoptive foster placements and that twelve families willing to adopt children with these characteristics had been identified. The caseworker's testimony about appellant's continued drug use and her nephew's injury satisfied the "potential harm" factor.

The trial court found that the children had been adjudicated by the court to be dependent-neglected and had continued out of appellant's custody for twelve months and, despite a meaningful effort by the department to rehabilitate appellant and correct the conditions that had caused removal, those conditions had not been remedied. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(*a* ). The court also found that "other factors" had arisen, which appellant did not remedy. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(*a* ). The children were in foster care for over nineteen months. Although appellant partially complied with the case plan and court orders, she continued to live her life in such a way that her children were still in serious danger of neglect. Continuing drug use shows both an indifference to remedying the problems plaguing the family and potential harm to the children. *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004). A parent's rights may be terminated even though she is in partial compliance with the case plan. *Chase v. Ark. Dep't of Human Servs.*, 86 Ark. App. 237, 184 S.W.3d 453 (2004). Even full completion of a case plan may not defeat a petition to terminate parental rights. *Wright v. Ark. Dep't of Human Servs.*, 83 Ark. App. 1, 115 S.W.3d 332 (2003). What matters is whether completion of the case plan achieved the intended result of making the parent capable of caring for the child. *Id.* Appellant's nephew's injury illustrated the potential harm of returning the children to appellant while her drug problem remained untreated.

Appellant argues in her pro se points that she did everything that the court ordered her to do. She admits making mistakes in the past while struggling

to rear the children alone, and asks this court to give her a second chance. The love for her children that appellant expressed in her letter to this court was recognized by the trial court. Sadly, that love was accompanied by appellant's persistent use of drugs and her refusal to admit that it was a problem. A parent's continued denial of personal responsibility demonstrates her indifference or incapacity to remedy the "subsequent issues" and properly care for her children. *Wright, supra.*

 Appellant objected at trial to Tracie Brown's testimony on the ground that anything that occurred after the filing of the petition for termination should be excluded. The court admitted her testimony because it was relevant to the "other factors" ground alleged in the _12_petition and appellant's ability to remedy the causes for the children's removal. This ruling was proper. Appellant's drug problem, which became apparent after this case was opened, clearly was related to her ability to take care of her children and to protect them from harm. Although she obtained appropriate housing, she engaged in other behavior, abusing drugs, which demonstrated that she was not yet a fit parent. Evidence of her nephew's injury was relevant to show that she was not yet able to take care of children. Additionally, appellant and her attorney were present at a staffing the week before the hearing when this issue was discussed, so it was not a surprise.

Appellant unsuccessfully attempted to enter into evidence some documents that were objected to as hearsay. Exhibit 2 was a letter from appellant's sister. Exhibit 4 consisted of appellant's medical records from outpatient surgery at St. Vincent Infirmary on March 10, 2009. Research that appellant printed about false-positive drug-test results, from an internet website, ask.web.com, was Exhibit 5. The trial court properly excluded all of these exhibits. Further, appellant's counsel expressly stated that she would not proffer them.

We hold that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit termination cases and that appellant's appeal is wholly without merit.

Affirmed; motion to withdraw granted.

GLADWIN and GLOVER, JJ., agree.