Cite as 2016 Ark. App. 286

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-882

| | |
|---|---|
| JESSICA CLARK<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD<br><br>APPELLEES | Opinion Delivered May 25, 2016<br><br>APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT [NO. JV-13-161]<br><br>HONORABLE EDWIN KEATON, JUDGE<br><br>REVERSED AND REMANDED |

## PHILLIP T. WHITEAKER, Judge

Jessica Clark is the mother of three children: J.C., K.C., and B.W. In September 2013, the Department of Human Services (DHS) removed all three children from Clark's care in a dependency–neglect action filed in the Ouachita County Circuit Court. DHS named and identified Charles Weeks as the putative father of B.W. Weeks was later adjudicated the father of B.W. by the circuit court at the probable-cause hearing upon stipulation of paternity by Clark and Weeks. Eventually, the court awarded permanent custody of B.W. to Weeks.

Clark appeals this award of custody and appears before us as the appellant. Clark raises two arguments for reversal. First, she argues that the trial court used the wrong standard to determine whether the modification of custody was appropriate. Second, in the alternative, she asserts there was insufficient evidence to support the trial court's determination that a change of custody was appropriate. Weeks does not appear before us. DHS and the attorney

ad litem (AAL) are the appellees and have filed responsive briefs to Clark's appeal. They also filed a joint motion to dismiss the appeal, arguing that the appeal should be dismissed on jurisdictional grounds.

Before we reach the merits of Clark's appeal, we must first address the jurisdictional issue raised in the appellees' joint motion to dismiss. To understand the motion, we must look to the procedural history of the circuit court's actions.

The court received evidence concerning the custody of B.W. in separate hearings conducted in December 2014 and January 2015. The court did not rule from the bench. Instead, on January 29, 2015, the trial court issued a letter ruling granting immediate permanent custody of B.W. to Weeks and setting forth the basis for its ruling. The court directed the AAL to prepare an order consistent with the decision set forth in its letter opinion. Despite the court's direction, no order was entered at that time. On March 18, 2015, a review hearing on B.W.'s half siblings was conducted. After the review hearing, the letter ruling was subsequently filed with the court. However, a formal order incorporating the letter opinion was not entered until August 19, 2015, and indicated that it was being entered *nunc pro tunc* to the January 26, 2015 hearing date. Clark filed her notice of appeal the same day the formal order was entered.

Both DHS and the AAL contend that the appeal should be dismissed because the notice of appeal was filed more than 21 days[1] after the letter opinion. In essence, they argue

---

[1] Pursuant to Arkansas Supreme Court Rule 6-9(b)(1), in dependency-neglect cases, the notice of appeal must be filed within twenty-one days following the entry of the order from which the appeal is being taken. *Garrett v. Ark. Dep't of Human Servs.*, 2016 Ark. 154.

that the letter opinion granting custody of B.W. is the order from which the appeal must be taken. We disagree. The Arkansas Rules of Appellate Procedure–Civil direct that an appeal may be taken only from a final judgment or decree entered by the trial court. Ark. R. App. P.–Civ. 2(a)(1). We have previously held that a ruling is not the equivalent of a written order for the purpose of determining finality on appeal; neither are letter opinions that have not been incorporated into the judgment. *Wilkinson v. Smith*, 2012 Ark. App. 604. We hold that the letter opinion in this case did not constitute a judgment or decree. It was merely the basis for the subsequent judgment or decree. In fact, the letter opinion clearly contemplated the entry of a formal order and directed the AAL to prepare it. That was not effectuated until August 19, 2015, when the formal order was entered. Because Clark's notice of appeal was filed on the same date of entry of the formal order, the notice was timely, and the motion to dismiss is denied.

We now turn to the merits of Clark's appeal. For her first point on appeal, Clark argues that the trial court utilized the wrong standard in awarding custody to Weeks. More specifically, Clark argues that the change-of-custody request in this case arose solely out of a dependency-neglect action and, as such, is governed by the juvenile code. Pursuant to Ark. Code Ann. § 9-27-334(a)(2)(A) (Repl. 2015), if a juvenile is found to be dependent-neglected, the circuit court may enter an order transferring custody of the juvenile to a relative or other individual if to do so is in the best interest of the juvenile. *Keckler v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 375, 383 S.W.3d 912. When a trial court decides that a change of custody should be effected under the juvenile code, the court must follow the

procedures and dispositions set forth in the code. *Miller v. Ark. Dep't of Human Servs.*, 86 Ark. App. 172, 177, 167 S.W.3d 153, 156 (2004). Here, Clark argues that the court failed to properly follow the statutory guidelines, including the requirement of a home study, for a transfer of custody under the juvenile code. Instead, she asserts that the court utilized the material-change-of-circumstances standard from domestic-relations proceedings to determine whether the modification of custody was appropriate.

Clark's assertions hold an element of truth. Clearly, the change-of-custody request in this case arose solely out of a dependency-neglect action.[2] DHS removed B.W.[3] from Clark's care and instituted a dependency-neglect cause of action. Because this was a dependency-neglect action, the case initially progressed as such and followed the statutory guidelines set forth in the juvenile code: (1) Clark was provided parent counsel and was provided services by DHS in order to achieve an initial goal of reunification; (2) Weeks was named as a party, was provided services by DHS, but was not provided parent counsel because of his status as a noncustodial parent from whom custody had not been removed; and (3) an AAL was appointed to represent the best interest of B.W. Because this was a dependency-neglect action, Clark is correct that, when the request for a change of custody was made, the statutory guidelines and framework for such a transfer set forth in the juvenile code should have been

---

[2] This dependency-neglect action is the only proceeding instituted by anyone concerning the custody of B.W. Arkansas recognizes four causes of action that may pertain to custody of minors: paternity, guardianships, divorces, and dependency-neglect proceedings.

[3] J.C. and K.C. were also removed. Clark ultimately regained custody of the half-siblings, and the dependency-neglect action was closed. The custody of these children is not at issue in this appeal.

SLIP OPINION

applied. Clark is also correct that the trial court did not follow the statutory guidelines, including the requirement of a home study, for a transfer of custody under the juvenile code in awarding custody to Weeks.

Here, the trial court clearly utilized the material-change-of-circumstances standard from domestic-relations proceedings to determine the award of custody to Weeks. The court held two evidentiary hearings before awarding custody to Weeks: a review hearing on December 14, 2014, and a continued evidentiary hearing on January 26, 2015. At the conclusion of the December 2014 review hearing, the AAL requested that Weeks be awarded custody. In response, the only objection made by Clark was that she had not been put on notice of a request for change of custody and was not prepared to put on rebuttal evidence.[4] The court then rescheduled for the continued evidentiary hearing. At the conclusion of the AAL's presentation of evidence at the January 2015 continued evidentiary hearing, Clark's attorney moved for dismissal on the basis that the AAL and Weeks had failed to show a "significant change of circumstances." The trial court denied the motion. In the order awarding custody to Weeks, the court specifically concluded "that there has been a material change in circumstances" and that "it is in the best interest" of B.W. to be placed in the custody of Weeks.

While Clark's assertions are correct, they cannot serve as a basis for reversal. We have long held that appellants are limited by the scope and nature of the arguments and objections presented at trial. *See Marlow v. United Sys. of Ark., Inc.*, 2013 Ark. 460. The only objection

_____

[4] At the time of this request, neither Weeks nor the AAL had filed any formal pleading requesting a change of custody.

SLIP OPINION

made by Clark at the December 2014 review hearing was one of notice, which the trial court attempted to address by continuing the hearing. We find no reference in the record where Clark presented to the trial court the arguments she now presents on appeal. Our court has consistently held that a party's failure to present an argument before the trial court cannot form the basis for reversal. *See Keckler v. Ark. Dep't of Human Servs.*, *supra*; *Broderick v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 771, 358 S.W.3d 909; *Ark. Dep't of Health & Human Servs. v. Jones*, 97 Ark. App. 267, 248 S.W.3d 507 (2007). In fact, our supreme court has held that even "[*d*]*e novo* review does not mean that this court can entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized." *Lamontagne v. Ark. Dep't of Human Servs.*, 2010 Ark. 190, at 4, 366 S.W.3d at 353 (quoting *Roberts v. Yang*, 2010 Ark. 55, at 7, 370 S.W.3d 170, 174).

Moreover, Clark's arguments are barred by the doctrine of invited error. The doctrine provides that a person cannot complain of an alleged erroneous action of the trial court if he himself induced such action. *Peeks v. Ark. Dep't of Human Servs.*, 304 Ark. 172, 174, 800 S.W.2d 428, 429 (1990). Below, Clark's attorney argued to the trial court that a "significant change of circumstances" was required to effectuate a change of custody, and that the court could not consider any evidence prior to the children being returned to her at the probable-cause hearing. In fact, her entire argument in support of her directed-verdict motion focused on the sufficiency of the evidence produced as to a significant change of circumstances. She now claims on appeal that the trial court's consideration and ruling in that regard was in error.

6

SLIP OPINION

Because she not only failed to object to the trial court's consideration of a "significant change in circumstances" but, in fact, invited the error, we are unable to reverse on this basis.

We next turn to Clark's second argument: whether there was sufficient evidence to support the trial court's decision to transfer custody from Clark to Weeks. Clark challenges the sufficiency of evidence to support the trial court's conclusions regarding whether there had been a significant change of circumstances and whether the transfer of custody was in the best interest of the child. In juvenile proceedings, our standard of review on appeal is de novo. Under this standard, we give no deference to the trial court's conclusions of law. *Young v. Ark. Dep't of Human Servs.*, 2012 Ark. 334, at 3; *Stehle v. Zimmerebner*, 375 Ark. 446, 456, 291 S.W.3d 573, 580 (2009). However, we give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Thomas v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 309, 419 S.W.3d 734. Under de novo review, we do not reverse unless the circuit court's findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Stewart v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 577. Based on this standard, we now turn our attention to the evidence before the trial court.

There is admittedly some evidence to support the trial court's decision to transfer custody from Clark. B.W. was removed from Clark's care because Clark reported suicidal ideations, admitted addiction to hydrocodone, was experiencing symptoms of detox, and was unable to obtain proper medical treatment for these symptoms due to issues with Medicaid.

At the time of the removal, B.W. was filthy and had feces falling out of his diaper. Despite these concerns, B.W. was returned to Clark's care after the probable-cause hearing. B.W. remained in Clark's care while the matter was reviewed by the court in February, April, July, and September 2014.

Throughout the course of the dependency-neglect action, the court heard evidence concerning Clark's compliance with the case plan. With regard to the case plan, Clark was to receive treatment for both mental-health and addictive issues. In regard to the mental-health issues, Clark had missed numerous scheduled appointments with her therapist. However, the therapist acknowledged that Clark had rescheduled many of the appointments and opined that Clark was making progress. In regard to the addictive issues, at the time of the two custody hearings, DHS recommended that Clark be assessed for either intensive-outpatient or inpatient drug rehabilitation treatment, to which Clark was willing to submit. In fact, it was the possibility of Clark needing inpatient treatment that prompted Weeks to request placement of B.W. with him so B.W. would not be placed with a nonrelative while Clark underwent treatment.

Throughout the course of the dependency-neglect action, the court heard evidence concerning Clark's parenting skills. The court heard evidence regarding two separate but isolated incidents involving Clark's attention to her children. In the first incident, Clark requested that a total stranger supervise her children while Clark went into a tobacco store. Clark denied this incident. In the second incident, one of B.W.'s half siblings wandered away from Clark's care and was found unattended and walking in a roadway. Clark admitted that

this incident occurred but explained how she did the best she could to find the child and deal with a terribly unnerving situation.

Additionally, the court heard concerns from Weeks and his relatives concerning Clark's parenting skills. They expressed concerns that B.W. was always dirty and had a diaper rash after returning from Clark's care. They expressed further concerns that B.W. was suffering from developmental delays, that Clark had failed to get him into therapy, and that B.W. had begun butting his head on the floor. While expressing these concerns at the hearing, they admitted a failure to report them to DHS. Lastly, they expressed a concern over an incident when Clark requested that B.W. be returned from visitation and dropped off at the VFW bar where Clark was working.

While there is some evidence to support the court's determination, there is other evidence that needs further development and should have been considered by the court. The trial court's order in this case focused primarily on what it perceived to be the shortcomings of Clark and why Clark should not be given custody of the child, but spent little attention to Weeks as an appropriate parent. Admittedly, the court noted in its order Weeks's appearance at all court sessions, his attendance at scheduled visitation, his employment, and his nebulous ability to "attend to the needs" of B.W. However, the trial court's order did very little to assess Weeks's stability as a parent or his ability to care for the child. There was some evidence for the court to consider concerning Weeks. Weeks held two different, relatively new, part-time jobs.[5] However, he did not have a set schedule at either place of employment.

---

[5] He had worked for four months at a pizza place and a couple of weeks at a Mexican restaurant.

SLIP OPINION

Also, both places of employment were located in different parts of the county in which Weeks resided. Because Weeks did not have a driver's license and could not afford to get it reinstated, he had to walk to work or obtain a ride from a relative. As a result of being dependent on relatives for transportation, Weeks would alternate living with his sister, his nephew, or his mother and stepfather, depending on which home was closer to which job. As a result of his uncertain work schedule, Weeks's mother provided child care for him during most of his court-scheduled visits.

Most importantly, the court's order fails to address what impact or effect the transfer of custody would have on B.W. The order does conclude that it would be in the best interest of B.W. to be placed in Weeks's custody. However, the order does not discuss Weeks's relationship with the child, nor does the trial court address what effect, if any, B.W.'s separation from his half siblings would have on him. One factor the court must consider in determining the best interest of the child is whether the child will be separated from his or her siblings. *Donato v. Walker*, 2010 Ark. App. 566, at 8, 377 S.W.3d 437, 441–42.

When the entire record is considered, we must reverse and remand because we are left with a definite and firm conviction that a mistake was committed when the trial court found that it was in B.W.'s best interest to be placed in the permanent custody of Weeks without fully considering the effect such a transfer might have on him. *See Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, at 9, 431 S.W.3d 303, 308. Because the trial court erred in failing to consider all the relevant factors in determining whether transfer of custody to Weeks was in the best interest of the child, we need not address Clark's other argument with respect

SLIP OPINION

to the sufficiency of the evidence to support a conclusion that there had been a material change of circumstances. Moreover, we need not address this issue because it is unlikely that the court will utilize this standard on remand. *See Va. Ins. Reciprocal v. Vogel*, 73 Ark. App. 292, 295, 43 S.W.3d 181, 183 (2001).

Finally, in making this determination, we recognize that in domestic-relations custody disputes we only consider what is in the best interest of the child after the material-change-of-circumstances threshold has been met. *See McCoy v. Kincade*, 2015 Ark. 389, 473 S.W.3d 8. However, our decision here is based on the unique facts and procedural anomalies presented to us in this particular dependency-neglect action. Therefore, we caution counsel that our analysis in this case should not be used as precedent in domestic-relations custody actions and should not be misconstrued as contradicting or overruling our previous decisions in domestic-relations custody disputes.

Reversed and remanded for further proceedings consistent with this opinion.

ABRAMSON and HOOFMAN, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.