MIKE MURPHY, Judge
Appellant Alisha Rice appeals from the Garland County Circuit Court's termination of her parental rights to her two children, T.L. (DOB: 12/09/2010) and A.B. (DOB: 11/12/2015). Rice argues that there was insufficient evidence to support the termination.[1] We affirm.
The Arkansas Department of Human Services ("the Department") exercised emergency custody of T.L. and A.B. on April 7, 2017, due to environmental neglect, educational neglect, and Rice's being under the influence of illegal drugs while in the presence of the juveniles. In an affidavit attached to the Department's petition for emergency custody, a family-service worker averred that the family had been the subject of a family-in-need-of-services case since February 27, 2017. A decision was made to remove the children from the custody of Rice on April 7 based on allegations that Rice was not meeting the children's needs, refused to allow the Department to have access to the children, and tested positive for several illegal substances. On April 10, the circuit court entered an ex parte order for emergency custody of T.L. and A.B.[2]
On April 13, the circuit court held a probable-cause hearing and found that probable cause existed for T.L. and A.B. to *909 remain in the Department's custody. Rice, who was not present, was ordered among other things, to cooperate with the Department, submit to random drug screens, complete parenting classes, submit to counseling and a psychological evaluation, and submit to a drug-and-alcohol assessment.
On May 17, the circuit court held an adjudication-and-disposition hearing. There, it found that T.L. and A.B. were dependent-neglected based on neglect and parental unfitness due to environmental neglect and Rice's testing positive for multiple illegal substances while T.L. and A.B. were in her care, custody, and control. The circuit court also ordered that the goal in this case be reunification with a concurrent goal of permanent relative guardianship/custody and reiterated its orders from the probable-cause hearing to Rice.
The circuit court held two review hearings and at one, it found partial compliance by Rice and continued the goal of reunification.
On April 4, 2018, the circuit court held a permanency-planning hearing. It changed the goal to adoption and authorized the Department to file a petition to terminate Rice's parental rights. In support of this order, the circuit court found that Rice continued to have issues with her physical living conditions, that she continued to abuse illegal substances, and that she continued to demonstrate an inability to properly supervise the juveniles. The circuit court also found that Rice had not shown a genuine and sustainable effort toward complying with the case plan's requirements and found that the Department had made reasonable efforts. On May 4, the Department filed a petition to terminate Rice's parental rights based on the grounds of failure to remedy[3] and aggravated circumstances.[4]
A termination hearing was held on August 1, 2018.[5] Travis Bratton, the Department's family-service worker assigned to Rice's case, testified first. Bratton testified to Rice's noncompliance with the case plan and explained that the children had remained out of the custody of the mother for fifteen months. He explained that she had been in the same one-bedroom, one-bathroom trailer since this case began and that she had not fully corrected the environmental-neglect issues that partly caused the children's removal. He further testified that Rice had not remained clean and sober during the pendency of the case and that she had tested positive within the two months leading up to the termination hearing. In fact, he administered a drug screen the day before the termination hearing and it came back abnormal; Bratton explained that Rice had likely supplied a "fake urine" sample. He testified that she did not submit to a drug-and-alcohol assessment, complete a course in parenting instruction, or view the video "The Clock is Ticking" until the children had been out of her care for twelve months. Bratton said that Rice did not maintain consistent and regular contact with the children; she missed twelve of the thirty scheduled visits during the pendency of the case.
Next, Sandra Brubaker, a court-appointed special advocate, testified that she agreed with the Department that it would be in the children's best interest to terminate parental rights because the children are excelling in the structured environment *910 they are in now. She explained they are going to school, getting medical care, learning manners, learning how to interact with other people, and are nutritionally better off.
Lastly, Shirley Watkins, an adoption specialist, testified that in her opinion the children were adoptable and that it was the Department's intent that the children be adopted as a sibling group.[6]
At the conclusion of the hearing, the circuit court granted the petition to terminate parental rights finding that termination was in the children's best interest and that the Department had proved both statutory grounds alleged. Rice filed a timely notice of appeal.
We review termination-of-parental-rights cases de novo. Strickland v. Ark. Dep't of Human Servs. , 2018 Ark. App. 608, 567 S.W.3d 870, 875-76. An order forever terminating parental rights must be based on a finding by clear and convincing evidence that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). The circuit court must consider the likelihood that the child will be adopted if the parent's rights are terminated and the potential harm that could be caused if the child is returned to the parent. Id. The circuit court must also find by clear and convincing evidence one or more grounds for termination. Id. When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the circuit court's finding is clearly erroneous. McGaugh v. Ark. Dep't of Human Servs. , 2016 Ark. App. 485, 505 S.W.3d 227. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In resolving the clearly-erroneous question, we defer to the circuit court because of its superior opportunity to observe the parties and judge the credibility of witnesses.
The purpose of the termination-of-parental-rights statute, Ark. Code Ann. § 9-27-341(a)(3), is to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time, as viewed from the juvenile's perspective. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. Blasingame v. Ark. Dep't of Human Servs. , 2018 Ark. App. 71, 542 S.W.3d 873. A parent's past behavior is often a good indicator of future behavior. Bridges v. Ark. Dep't of Human Servs. , 2019 Ark. App. 50, 571 S.W.3d 506.
Rice challenges both grounds found by the circuit court supporting the termination of her parental rights. First, as to the failure-to-remedy ground, Rice contends that while her compliance with the case plan and the court orders was admittedly "somewhat slow," the evidence presented by the Department proved that its own caseworker, Bratton, was biased against Rice and thus the Department did not meet its burden to engage in meaningful efforts to provide appropriate services. She alleges that although the Department did offer certain services to the family, some services that were "critical to the goal of reunification" were never offered *911 and that it was a direct result of Bratton's decision to not follow protocol and get approval from the circuit court or the Department excusing Rice from the service. Rice is referring to Bratton's decision to not provide Rice with the service of hands-on parenting.
The failure-to-remedy ground is demonstrated if "despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent." Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) . One of the conditions that caused removal in this case was that Rice was under the influence of illegal drugs while in the presence of the juveniles. Despite numerous services throughout the case, this remained true. It is apparent the circuit court did not err in terminating Rice's parental rights based solely on the argument that Bratton did not set her up with hands-on parenting. In its termination order, the circuit court found:
[Rice] has not remained clean and sober; she failed to cooperate regarding a drug/alcohol assessment and treatment services by Quapaw House; she did not complete a course in parenting instruction or watch "The Clock is Ticking" video until after the permanency planning hearing; she insufficiently participated in counseling; did not follow the recommendations of her psychological evaluation; and only eighteen of thirty visits were completed.
On these facts, we do not think the circuit court erred in finding that the Department made meaningful efforts to correct the conditions that caused removal. Because we can affirm on this ground, we need not address Rice's argument that the Department did not provide sufficient evidence that Rice subjected her children to aggravated circumstances.
Next, Rice argues that the circuit court erred in its best-interest analysis. A parent's rights may be terminated if a circuit court finds by clear and convincing evidence that termination is in the best interest of the juvenile. Ark. Code Ann. § 9-27-341(b)(3)(A). The court must consider the likelihood that the juvenile will be adopted if the termination petition is granted and the potential harm caused by returning the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i)-(ii). In the present case, the circuit court determined that there was a clear likelihood that the children would be adopted and that there was a risk of potential harm if returned to Rice.
Rather than challenge the adoptability and potential-harm finding, Rice challenges the circuit court's best-interest finding based on the circuit court's failure to address the issue of T.L.'s and A.B.'s relationship with their sibling, C.D., who was not in the Department's custody. In support of her argument, she cites Caldwell v. Arkansas Department of Human Services , 2010 Ark. App. 102, 2010 WL 374432, and Clark v. Arkansas Department of Human Services , 2016 Ark. App. 286, 493 S.W.3d 782. However, these cases are distinguishable from Rice's case. First, we reversed the termination in Caldwell because we held that terminating the parental rights of only the father would not serve to achieve permanency and that the termination of the father's rights endangered the child's relationship with her paternal grandmother, which the circuit court found to be the most stable influence on the child. Next, Rice relies on Clark for the proposition that "one factor the court must consider in determining the best interest of the child is whether the child will be separated from his or her siblings." Clark , 2016 Ark. App. 286, at 10, 493 S.W.3d at 789. However, Clark concerned an appeal *912 of a custody award between two parents-not a termination of parental rights-and we held that sibling separation is only one factor that the circuit court may consider with a best-interest finding.
Here, the circuit court considered the two best-interest factors required under the termination statute based on the evidence presented. Its failure to make a finding regarding the effect of termination on the familial relationship with C.D., when there was never any court order in place allowing T.L. or A.B. to visit with C.D., was not reversible error. Accordingly, under these circumstances, we cannot say that the circuit court clearly erred in its determination that it was in the children's best interest to terminate Rice's parental rights.
Affirmed.
Gladwin and Brown, JJ., agree.

The circuit court also terminated the parental rights of the fathers to the children, but neither is a party to this appeal.

The petition for emergency custody noted that the children have a sibling, C.D., who resides with her father in Malvern.

Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) .

Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(A)-(B)(i) .

Rice was not present for the hearing despite telling her attorney the night before that she would be there.

At the time of the termination hearing, the children were in a provisional placement with their aunt and uncle. The record revealed that the aunt and uncle hoped to adopt the children.