Cite as 2021 Ark. App. 156

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-20-647

|  |  |
|---|---|
| TIANNA JACKSON | **Opinion Delivered** April 7, 2021 |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-18-113] |
| V. |  |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE GUNNER DELAY, JUDGE |
|  | AFFIRMED |
| APPELLEES |  |

## LARRY D. VAUGHT, Judge

Tianna Jackson appeals the order entered by the Sebastian County Circuit Court terminating the parental rights to her four children, DM (born 9-13-12), EM (born 2-21-16), KJ (born 9-14-17), and MW (born 9-24-18). On appeal, Jackson argues that the evidence fails to support the circuit court's potential-harm finding and that the circuit court erred in failing to consider the sibling relationship when determining that termination of her parental rights is in their best interest. We affirm.

On February 28, 2018, the Arkansas Department of Human Services (DHS) filed a petition for dependency-neglect alleging that DM, EM, and KJ, who were living with Jackson, were dependent-neglected and at substantial risk of harm as a result of abuse, neglect, or parental unfitness. The affidavit attached to the petition provides a history of DHS's

involvement with Jackson, which includes a protective-services case (PSC) that had been opened against her in March 2016 after she tested positive for THC at EM's birth. The affidavit states that during the PSC, Jackson failed to attend a drug-and-alcohol assessment; tested positive for THC on April 19, May 17, June 21, July 20, August 19, September 19, 2016, and February 7, March 6, June 23, and July 12, 2017; and tested positive for THC and methamphetamine on January 22, 2018. Jackson's failure to comply with the PSC was DHS's basis for filing the dependency-neglect petition.

After an adjudication hearing, the circuit court entered an order on July 20, 2018, finding that DM, EM, and KJ were dependent-neglected due to parental unfitness and substance abuse; however, the court did not remove the children from Jackson's custody. She was ordered to, among other things, obtain and maintain stable housing, employment, income, and transportation; submit to random drug screens; and to submit to a drug-and-alcohol assessment and complete any recommended treatment.

A review-hearing order was entered on September 7 wherein the circuit court found that the children were still in need of services but could remain in Jackson's care because she was in compliance with court orders. The review order also notes that Jackson had reported that she was pregnant; that she had submitted to drug treatment in July; and that she submitted to a hair-follicle test in August, the results of which were pending.

On January 18, 2019, DHS filed another petition for emergency custody and dependency-neglect. The affidavit attached to this petition recites the history of DHS's involvement with Jackson dating back to 2016 and further alleges that MW, who was born on September 24, 2018, had THC in her system on September 28; Jackson had been discharged

2

from the drug-treatment program for failing to attend sessions; she was homeless in November for failing to renew her HUD paperwork; she failed to keep in contact with DHS; she refused to advise where she and the children were staying; and she admitted continued THC use. The affidavit further states that on January 15, 2019, Jackson revealed to a DHS employee that MW's putative father, Myreon Whitfield, with whom Jackson and MW lived, had struck Jackson. When Jackson failed to take her children to a domestic-violence shelter and she failed to advise DHS where her children were staying, DHS removed the children from Jackson's custody.

The circuit court entered an ex parte order for emergency custody on January 18 and a probable-cause order on February 26. After a second adjudication hearing, the court entered an order on March 25 finding the children dependent-neglected on the basis of parental unfitness resulting from Jackson's substance abuse[1] and ordering that the children remain in the custody of DHS. The goal of the case was set as reunification, and the court ordered Jackson to remain clean and sober; submit to random drug screens; obtain and maintain safe and stable housing, income, employment, and transportation; maintain contact with DHS; keep DHS informed of any significant life events; complete parenting classes; submit to a psychological evaluation and complete any recommended treatment; submit to a drug-and-alcohol assessment and complete any recommended treatment; visit regularly with her children; and complete domestic-violence classes.

A review order was entered on July 12 wherein the court found that while Jackson said she was working and had completed her psychological evaluation, she had not complied with

___

[1]Jackson stipulated to the dependent-neglect finding.

3

the court's orders because she continued to test positive for drugs and had not completed parenting classes, a drug-and-alcohol assessment, or domestic-violence classes. On January 9, 2020, DHS filed a petition to terminate Jackson's parental rights alleging the "failure to remedy" ground pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)* (Repl. 2020); the "subsequent factors" ground pursuant to section 9-27-341(b)(3)(B)(vii)*(a)*; and the "aggravated circumstances" ground pursuant to section 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)(i)*. DHS also alleged that termination was in the children's best interests.

A permanency-planning order was entered on January 21 wherein the court changed the goal of the case to adoption after the court found that Jackson was not complying with the case plan and court orders and had not made significant or measurable progress. The court notes that DM and EM had been living with their paternal grandfather in a relative foster-care placement and that KJ and MW had been living in a separate foster-care placement.

The termination hearing was held on June 16. DHS family-service worker Cassidy Pickle testified that DHS had become involved with Jackson when the PSC was filed in March 2016. Pickle testified that while Jackson's children remained in her custody during the pendency of the PSC, Jackson did not comply with the PSC services ordered for her. Pickle said that she was assigned to Jackson's case in February 2019 after the dependency-neglect case had been filed. She stated that Jackson's children were not removed from her custody after the first dependency-neglect petition was filed. DHS offered multiple services to Jackson in 2019 that had already been offered to her in the PSC: parenting classes, a drug-and-alcohol assessment and recommended treatment, a psychological evaluation and recommended

4

treatment, housing, transportation, and drug screens. Jackson was also offered domestic-violence classes in 2019.

Pickle acknowledged that Jackson had completed her psychological evaluation and drug-and-alcohol assessment. And Pickle said that Jackson had also complied with random drug screens but that she tested positive for THC on ten of eleven occasions.[2] Pickle said that Jackson completed only one parenting class and failed to attend outpatient drug treatment and domestic-violence classes. Pickle said that Jackson does not have safe and stable housing or steady income and that she did not regularly visit her children. Specifically, Jackson had attended thirty-seven of seventy-two scheduled visits.

Pickle further testified that the children are adoptable, and none have disabilities that might create a barrier to adoption. Pickle stated that DM and EM's grandfather is willing to adopt them, and the foster parents caring for KJ and MW are willing to consider adopting them. She said that the children had been having visitation with each other and that she expected that would continue. Finally, Pickle testified that DHS had been involved with Jackson for about four years, and she had been offered services in both the PSC and the dependency-neglect case, yet Jackson had not remedied her problems: Jackson is still using drugs, and she has no stable housing, income, or transportation. Pickle opined that termination is in the best interest of the children.

Jackson testified that she has been living with her aunt for a few months at 1930 North 13th Street. Previously, she had been living at 2010 North 13th Street, but she said that home

_____

[2]The record reflects that Jackson tested positive for THC on February 26; March 6 and 20; April 10; May 1 and 22; August 21; September 18; and November 13 and 27, 2019.

is in foreclosure due to a tax delinquency. She told the court that if she receives custody of her children, she will ask her father to pay the delinquent taxes, and she and her children will live there. She admitted that she had previously asked her father to pay the taxes, but he refused. Jackson further stated that she has been working for the past two months at an inventory company earning $10.50 an hour. She said she works thirty-five to forty hours a week. She testified that she did not provide housing or employment information to DHS because her caseworker does not respond to text messages.

Jackson admitted canceling some of the visitations, but she testified that many of the visits were canceled by DHS after she would advise that she would be late or needed transportation to the visit. She testified she had trouble attending domestic-violence classes because they were scheduled in Van Buren, and she did not have transportation. She said that she asked for domestic-violence classes in Fort Smith, but Pickle would not respond to her. She later acknowledged that the referrals she signed for domestic-violence classes were for classes in Fort Smith.

Jackson admitted that she tested positive for THC during the case and that she would probably test positive the day of the termination hearing. She said that she had been trying to get a medical-marijuana card. She stated that she asked DHS for transportation and housing assistance, but she did not get a reply.

Jackson told the court that she wants her children home with her. She said that DHS has a "vendetta" against her and that her caseworker will not help her regain custody of her children. She stated that her children were removed from her custody because of domestic violence that was committed against her, but the offender, Whitfield, is no longer in her home;

6

therefore, she has remedied that problem. She also testified that she has been seeing a life coach.

At the conclusion of the hearing, the court terminated Jackson's parental rights to her four children. An order terminating her parental rights was entered on August 12 wherein the court found that DHS had proved all three grounds alleged in the petition. The court also concluded that termination was in the best interest of the children finding that the children are adoptable and subject to potential harm if returned to Jackson's custody. Jackson appealed from the termination order.[3]

When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Jackson v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 440, at 4, 503 S.W.3d 122, 125. Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Id.* at 5, 503 S.W.3d at 125. Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*, 503 S.W.3d at 125.

Termination of a parent's rights must be based on clear and convincing evidence that it is in the best interest of the child, considering the likelihood that the child will be adopted if the parent's rights are terminated and the potential harm caused by returning the child to the custody of the parent. *Id.*, 503 S.W.3d at 125; Ark. Code Ann. § 9-27-341(b)(3)(A)(i), (ii). In considering potential harm caused by returning the child to the parent, the circuit court is not

---

[3]The termination order also terminates the parental rights of Emmanuel Martinez, the putative father of DM and EM, and Donte Robertson, father of KJ. Neither Martinez nor Robertson has appealed from the termination order; thus, they are not parties to this appeal. In a previous order, the circuit court found that Myreon Whitfield failed to prove significant contacts with MW, and the court dismissed Whitfield from the case.

required to find that actual harm would result or affirmatively identify a potential harm. *Id.* at 6, 503 S.W.3d at 126. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability the child receives in a permanent home. *Id.*, 503 S.W.3d at 126. In addition, the order terminating parental rights also must be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). *Id.*, 503 S.W.3d at 125.

Clear and convincing evidence is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.*, 503 S.W.3d at 125. When the burden of proving a disputed fact in equity is by clear and convincing evidence, the question that we must answer on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.*, 503 S.W.3d at 125–26. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*, 503 S.W.3d at 126. Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. *Id.*, 503 S.W.3d at 126. We review termination-of-parental-rights cases de novo. *Wallace v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 481, at 3, 470 S.W.3d 286, 289.

Jackson does not challenge the statutory grounds supporting the circuit court's termination order. Regarding the court's best-interest finding, Jackson does not challenge the court's adoptability finding. Accordingly, this court must affirm these findings. *Dye v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 10, at 9, 592 S.W.3d 254, 259 (citing *Phillips v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 383, at 11–12, 585 S.W.3d 703, 709).

8

Jackson challenges the potential-harm prong of the circuit court's best-interest finding. She argues that the circuit court's findings—that she failed to complete case-plan services, does not have stable housing or income, and has not addressed her drug issues—do not demonstrate that her children would be at risk of potential harm if returned to her custody because these same conditions existed from March 2016 to January 2019 during which time DHS allowed her to retain custody of her children. She also argues that there is no evidence that her continued marijuana use poses a risk of harm to the children; she has housing and a job; she has been seeing a life coach; she has valid reasons why she did not attend visits with her children or domestic-violence classes; and she is no longer in a relationship with Whitfield, who was the cause of the removal of her children in January 2019.

Jackson's arguments are requests that our court reweigh the evidence in her favor, which we will not do. Here, the circuit court specifically found that Jackson's testimony lacked credibility. Therefore, the circuit court did not believe that Jackson had housing and a job. The court did not believe Jackson's excuses for failing to attend visitation and domestic-violence classes or her claim that DHS has a "vendetta" against her and will not help her or return her texts. The court did not believe her claim that her drug use does not affect her children or that her children were removed from her custody because of domestic abuse committed against her. Credibility determinations are for the circuit court to make, not this court. *Jackson*, 2016 Ark. App. 440, at 7, 503 S.W.3d at 126.

Further, clear and convincing evidence supports the circuit court's potential-harm finding in this case. The court found that DHS worked with Jackson in a PSC from March 2016 to February 2018 providing her services to address her drug use, which was unsuccessful.

9

In February 2018, a court-involved PSC was initiated. Jackson was allowed to retain custody of her children, and DHS offered additional services to address Jackson's abuse problem; however, her drug use continued. In January 2019, Jackson's children were taken into DHS custody as part of this dependency-neglect case, and DHS offered Jackson more services to address her drug use. Yet Jackson has continued to use drugs, and she has failed to complete the drug-treatment program. Jackson testified at the termination hearing that she would not pass a drug test. This court has consistently held that continuing drug use demonstrates potential harm to children. *Jackson*, 2016 Ark. App. 440, at 7, 503 S.W.3d at 126; *see also Furnish v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 511, 529 S.W.3d 684; *Eldredge v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 385; *Davis v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 815, 370 S.W.3d 283; *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004).

The circuit court also found that Jackson attended only thirty-seven of seventy-two visits with her children, which is a factor to consider in the potential-harm analysis. *Henderson v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 191, at 10, 377 S.W.3d 362, 368. The circuit court found that Jackson failed to complete parenting classes and domestic-violence classes and does not have stable housing or income, which are additional factors to be considered when determining potential harm. *Taylor v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 264, at 13; *Rivera v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 405, at 16, 558 S.W.3d 876, 885 (holding that the failure to provide stable housing and to comply with the court's orders demonstrates potential harm to the child). Accordingly, we hold that the circuit court was not clearly erroneous in finding that the children would be at risk of potential harm if returned to Jackson's custody.

Jackson's second point on appeal is that the circuit court's best-interest finding is incomplete because the evidence shows that the children would likely not be adopted together, yet the court failed to make any findings about how this would affect the sibling relationship. She argues that the court's failure to consider the sibling relationship warrants reversal pursuant to *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, and *Clark v. Arkansas Department of Human Services*, 2016 Ark. App. 286, 493 S.W.3d 782. However, the holdings in *Caldwell* and *Clark* are distinguishable. *Caldwell* was a single-parent termination case and did not involve adoption (the child was in the custody of her mother) or the severance of a sibling relationship after termination.

In *Clark*, the order terminating the mother's parental rights and awarding permanent custody of the child to his father failed to fully consider the effect such a transfer might have on the child. *Clark*, 2016 Ark. App. 286, at 10, 493 S.W.3d at 789. In other words, the order failed to include findings that the award of custody to the father was in the child's best interest. Instead, the termination order focused on the mother's shortcomings and why she should not be given custody of her child. *Id.* at 9, 493 S.W.3d at 788. The circuit court in the instant case made numerous findings (as set forth above) to support its conclusion that termination of Jackson's parental rights is in the best interest of her children.

The instant case is more akin to *Allen-Grace v. Arkansas Department of Human Services*, 2019 Ark. App. 286, 577 S.W.3d 397. In *Allen-Grace*, the mother appealed the best-interest finding, arguing, among other things, that the circuit court failed to consider the effect the termination decision would have on the future sibling relationship between her children AS, AG1, and AG2: AS was in the care of her paternal grandparent, who wanted to adopt her, and

11

AG1 and AG2 were in the care of their different paternal grandparents, who wanted to adopt them.

In addressing Allen-Grace's separate-sibling-adoption argument, we held that when making its best-interest analysis, the circuit court considers the children individually when determining whether termination is in each child's best interest and cannot treat the children as an amorphous group in which the best interest of one will meet the interests of all. *Id.* at 8, 577 S.W.3d at 401–02. We stated that keeping siblings together is an important consideration but not outcome determinative as the best interest of each child is the polestar consideration. *Id.* at 8–9, 577 S.W.3d at 402. We then pointed out that in addition to the significant evidence of potential harm, the evidence also showed that Allen-Grace's children had been living with their respective paternal grandparents for more than one year, they were bonded to the grandparents, and the grandparents were taking excellent care of them. *Id.* at 9, 577 S.W.3d at 402. The CASA volunteer, the caseworker, and the children's therapists recommended that the children stay with their grandparents, and there was nothing to indicate that the grandparents would not allow the siblings to keep visiting as they had throughout the dependency-neglect case. *Id.*, 577 S.W.3d at 402. In light of this evidence, we affirmed the court's best-interest finding. *Id.* at 10, 577 S.W.3d at 402.

As in *Allen-Grace*, there is significant evidence to support the circuit court's finding that Jackson's children would be subjected to potential harm if returned to her custody. Additionally, there is evidence that Jackson's children have been in their respective foster-care placements for a year and a half, the caseworker recommended that they stay with their respective foster-care placements, they have had the opportunity to visit each other during the

12

dependency-neglect action, and it is expected that visitation will continue thereafter. Accordingly, we hold that the circuit court's best-interest findings are not clearly erroneous.

Affirmed.

ABRAMSON and BARRETT, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.